GASKINS, J.
 

 _jjThe defendant, Donny Carper, was convicted by a jury of one count of aggravated rape and one count of molestation of
 
 *606
 
 a juvenile. The trial court sentenced the defendant to serve life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for aggravated rape and to serve 25 years of imprisonment at hard labor without benefit of parole, probation or suspension of sentence for molestation. The defendant now appeals, urging six assignments of error. Because we find merit to some of the defendant’s assignments of error pertaining to confrontation clause violations, we reverse the defendant’s convictions and remand the matter to the trial court for further proceedings.
 

 FACTS
 

 The defendant is married with three daughters. The two older daughters are the alleged victims in the instant case: T.D., born in November 1997, and C.C., born in April 2000. In 2005, the defendant’s wife, the mother of these young girls, was injured in an accident which left her a quadriplegic and unable to care for herself or her family. After the defendant became the children’s primary caregiver, others noticed changes in the children’s behavior. The children’s maternal grandmother noticed that T.D. started walking “with a limp like she was hurting all the time, her stomach was hurting her or whatever. And she was just sad all the time.” The grandmother also testified that the girls were angry or acting out “most of the time” and not doing well in school. The defendant’s sister said that the girls appeared to be afraid of their father and said that the children “smelled like sex” when they came to visit.
 

 |2The caretaker of the children’s invalid mother knew the girls from her association with their mother and their presence in their mother’s home. Over the defendant’s hearsay objection, the caretaker testified that on one occasion, T.D. told her that “[M]y dad been raping me.” The caretaker also testified that she heard C.C. tell her mother:
 

 I was five years old and I was at home doing my homework and [the defendant] said “come here, [C.C.]” and I went to him and he stuck his private in my mouth and I just threw up all over his shoes.
 

 An adult cousin of the children noticed that the girls were “scared for us to touch them or bathe them.” She said that C.C. has an anger problem and claims to “hate everything.” In May 2008, the cousin noticed that T.D. had an unusual discharge from her genitalia, so she took the child to a Shreveport emergency room. At that point, the physician there, Dr. Christopher Ritchey, involved the police when T.D. told the doctor that her father had put his penis in her vagina and rectum.
 

 Springhill Police Juvenile Officer Dale Sindle investigated the complaint. Arrangements were made for the children to be seen at the Gingerbread House, a facility where a forensic interviewer could speak with the children.
 

 Each child was interviewed at the Gingerbread House by Crystal Clark in May 2008, and their interviews were recorded on video. C.C. related that, when she was five years old, she was standing up doing her homework when her father touched her bottom. She related that he touched her underneath her clothes, with both of his hands, and told her not to tell anyone. She also said that her sister was in the room at that time and that|sshe (C.C.) saw her father do the same thing to her sister. When asked if her father had touched her anywhere else, including her “private,” C.C. answered no. When asked if her father had ever done anything else to her that made her feel uncomfortable, C.C. answered no.
 

 
 *607
 
 T.D. told the interviewer that her father had, “hundreds of times,” used his “privacy” to touch her on her “privacy” and her “butt.” She said that her father told her not to tell anyone. In particular, T.D. explained that her father would take her clothes off and start hurting her by putting his privacy into her privacy. She said that she told her father to get off of her but he said “no.” She said that she had seen “yucky white stuff’ coming out of his privacy. T.D. said that the last time her father did this to her was November 12, 2007, when she was nine years old, and that she remembered the date because she had written it in her diary. However, T.D. said that she later threw the diary away. She related that she had also once seen her father touch her sister C.C. with his privacy on her privacy and that she had also seen him touch C.C. on her “butt” under her clothes and that C.C. said “ouch” during the incident.
 

 The children were both sent to a pediatrician, Dr. Jennifer Rodriguez, for examination. The physical exam of T.D. on May 7, 2008, was normal and revealed no physical evidence of abuse. Dr. Rodriguez explained that these findings neither confirmed nor denied abuse and were consistent with the provided history, particularly given that the examination took place six months after the last incident with T.D. The doctor was unable to examine C.C. because the child was too upset to be examined.
 

 |4The state charged the defendant with the aggravated rape of T.D. and molestation of C.C. The principal evidence against the defendant at trial was the recorded testimony of the children. The children did not testify from the witness stand, although they were present at the courthouse and were available to be called as witnesses. The defendant strenuously objected to the introduction of the recorded interviews into evidence. The defendant urged that the interviews were hearsay, and that there was never a formal determination before trial that the children were “protected parties” within the meaning of La. R.S. 15:440.5. The trial court overruled these objections, finding that the children were clearly protected parties and that the state had met all the requirements set forth in the statute. The defendant also objected to the state’s decision not to call the children as witnesses contemporaneously with showing the tapes. The court overruled that objection on the grounds that the children were available to testify and that there was no rule holding that the children had to testify contemporaneously.
 

 The jury unanimously convicted the defendant of both charged offenses. The court sentenced the defendant to the mandatory life sentence without benefits for the aggravated rape conviction and initially sentenced him to serve 20 years of imprisonment at hard labor for molestation. The latter sentence was vacated because it fell below the minimum sentence, and the court resentenced the defendant to serve 25 years of imprisonment at hard labor without benefits for the molestation conviction. Motions to reconsider sentence and for new trial were denied by the trial court. The |,-.defendant now appeals, urging six assignments of error. Because we find merit in the assignments of error pertaining to the confrontation clause, we pretermit the other assignments which pertain to different issues.
 
 [1]
 

 
 *608
 
 CONFRONTATION CLAUSE
 

 The defendant directs three assignments of error to the state’s use as evidence of the recorded statements of the victims in combination with the state’s decision not to call the children as witnesses. The defendant urges generally that the state’s use of the videotaped interview of the children and the manner in which the videotape was presented violated his federal and state constitutional rights to confront his accusers. Specifically, the defendant asserts that he was denied his right to confront his accusers as guaranteed to him by both the Louisiana and United States Constitutions when the state failed to call either child as a witness. In another assignment of error, he contends that the trial court erred in admitting the videotaped interviews of the children without requiring the state to call the two children as witnesses in its case-in-chief and tendering each to him for cross-examination. We find merit in these assignments of error.
 
 [2]
 

 | (¡Legal Principles
 

 The Confrontation Clause of the Sixth Amendment provides that, “[in] all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” This bedrock procedural guarantee applies to both federal and state prosecutions.
 
 Pointer v. Texas,
 
 380 U.S. 400, 85 S.Ct. 1065,13 L.Ed.2d 923 (1965);
 
 Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Sixth Amendment safeguards the defendant’s right to confront his accusers and to subject their testimony to rigorous testing in an adversary proceeding before the trier of fact.
 
 California v. Green,
 
 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970);
 
 State v. Kennedy,
 
 2005-1981 (La.5/22/07), 957 So.2d 757,
 
 reversed in part on other grounds, Kennedy v. Louisiana,
 
 - U.S. - , 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008). See also La. Const. Art. 1, § 16.
 

 The United States Supreme Court has considered the issue of the extent of a defendant’s Sixth Amendment right of confrontation and the violation of that right in the context of cases using out-of-court statements. In
 
 Ohio v. Roberts,
 
 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the United States Supreme Court examined whether the transcript of testimony at a preliminary examination could be admissible at trial where the witness had left town and could not be reached to attend the trial. In
 
 Roberts,
 
 the Supreme Court determined that when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that the witness is unavailable. Even then, his statement |7is admissible only if it bears adequate “indi-cia of reliability.” According to the Su
 
 *609
 
 preme Court, reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. However, as discussed below,
 
 Ohio v. Roberts, supra,
 
 was reversed by
 
 Crawford v. Washington, supra.
 

 In
 
 Coy v. Iowa,
 
 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), the defendant was convicted of committing lascivious acts with a child. At the jury trial, the children appeared in court and testified, but a screen was placed between the defendant and the two complaining witnesses, blocking him from their sight. The defendant claimed that this procedure violated his Sixth Amendment right of confrontation. The Supreme Court agreed that this procedure violated the defendant’s right to a face-to-face encounter with his accusers. The conviction was reversed, and the matter remanded for further proceedings to determine whether the error was harmless.
 
 [3]
 

 Even though in
 
 Coy v. Iowa, supra,
 
 the United States Supreme Court determined that the defendant’s right of confrontation was violated where |sthe defendant was behind a screen, the Court in
 
 Maryland v. Craig, supra,
 
 determined that the Confrontation Clause of the Sixth Amendment did not categorically prohibit a child witness in a child abuse case from testifying against a defendant at trial, outside the defendant’s physical presence, by one-way closed circuit television.
 

 The Supreme Court reviewed a Maryland statute which allowed a child abuse victim to testify by one-way closed circuit television where it was shown that the child witness would suffer serious emotional distress such that the child could not reasonably communicate. The Supreme Court held that, if the state makes an adequate showing of necessity, the state’s interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.
 

 According to the Supreme Court, although the Maryland statute, when invoked, prevented a child witness from seeing the defendant as he or she testifies against the defendant at trial, the procedure preserved all of the other elements of the confrontation right:
 

 The child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor)
 
 *610
 
 the demeanor (and body) of the witness as he or she testifies. Although we are mindful of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontation — oath, cross-examination, and observation of the witness’ demean- or — adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony.
 

 |9The Court in
 
 Craig
 
 said that the requisite finding of necessity must be a case-specific one. The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. The trial court must also find that the child "witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. Denial of face-to-face confrontation is not needed to further the state’s interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than
 
 de minimis, i.e.,
 
 more than mere nervousness or excitement or some reluctance to testify.
 

 The Supreme Court in
 
 Craig
 
 concluded that, where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child’s ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial tesfi ing and thereby preserves the essence of effective communication. Because there was no dispute that the child witnesses in that case testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and the defendant as they testified, the Supreme Court stated that, to the extent that a proper finding of l10necessity was made, the admission of such testimony was consonant with the Confrontation Clause.
 

 In
 
 Crawford v. Washington,
 
 the Supreme Court reexamined and overruled its holding in
 
 Ohio v. Roberts, supra.
 

 [4]
 

 As stated above, in
 
 Roberts,
 
 the Supreme Court held that an unavailable witness’s out-of-court statement may be admitted so long as it had adequate indicia of reliabili
 
 ty
 
 — i.e., that it falls within a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness.
 

 In
 
 Crawford,
 
 the defendant was accused of stabbing a man who allegedly attempted to rape the defendant’s wife. The defendant claimed self-defense. The wife gave a tape-recorded statement to the police which was introduced at trial against the defendant, even though he had no opportunity to cross-examine his wife. The wife did not testify due to the state marital privilege which barred a spouse from testifying without the other spouse’s consent. The defendant claimed that the use of his wife’s statement violated his right of confrontation. The Supreme Court agreed that the defendant’s right of confrontation was violated by the use of his wife’s statement to the police.
 

 The Supreme Court reviewed its jurisprudence construing the right of confron
 
 *611
 
 tation and concluded that its cases remained faithful to the understanding of the framers of the constitution regarding the right of confrontation: testimonial statements of witnesses absent from trial have 11 [been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine. The Supreme Court also noted that, although the results of its decisions had generally been faithful to the original meaning of the Confrontation Clause, the same could not be said of its rationales. It called into question the rationale used in
 
 Ohio v. Roberts, supra,
 
 which conditioned the admissibility of all hearsay evidence on whether it falls under a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness. The Court stated that where testimonial statements are involved, the framers of the Constitution did not mean to leave the Sixth Amendment’s protections to the vagaries of the rules of evidence, much less to amorphous notions of “reliability.”
 

 The Court noted that the unpardonable vice of the
 
 Roberts
 
 test is its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude. The Court found that where testimonial evidence is at issue, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. Accordingly, in
 
 Crawford,
 
 because the defendant was denied his right of cross-examination, the defendant’s conviction was reversed and the matter was remanded.
 

 The United States Fifth Circuit Court of Appeals has specifically considered the question of whether the use by the state of a recorded interview of a child alleged to be a victim of sexual abuse, without the state calling the child as a witness, violated the defendant’s right of | ^confrontation. The Fifth Circuit has repeatedly found that this practice is a violation of the right of confrontation.
 

 In
 
 Lowery v. Collins,
 
 988 F.2d 1364 (5th Cir.1993), the defendant was convicted of aggravated sexual assault of a child. At the trial, a videotaped interview with the six-year-old child was played for the jury, in which the child explained the alleged molestation in detail. The child did not testify at the trial. The defendant timely objected to the videotaped interview. His objection was overruled and he was convicted. After exhausting his state remedies, the defendant instituted a habeas corpus proceeding in the federal court, asserting that he had been denied his confrontation rights under the Sixth Amendment. The Fifth Circuit found that the defendant’s right of confrontation was violated and the violation was not harmless error.
 

 In analyzing the matter, the Fifth Circuit noted that the constitutional safeguards approved by the Supreme Court in
 
 Maryland v. Craig, supra,
 
 were conspicuously absent during the defendant’s trial in this case. The Fifth Circuit stated that the procedure used did not preserve all other elements of the confrontational right, noting that the competency of the witness to testify was not determined, the child was not under oath during the videotaped interview, the defendant did not have an opportunity for a full and contemporaneous cross-examination of the child during the interview, and the jury did not have the opportunity to observe the demeanor of the child, all factors mentioned in
 
 Maryland, v. Craig, supra,
 
 to determine the child’s veracity.
 

 | isThe prosecution in
 
 Lowery, supra,
 
 argued that the child was available to testify and that the defendant’s failure to call the child to the witness stand constituted a waiver of his Sixth Amendment right.
 
 *612
 
 The Fifth Circuit rejected the prosecution’s argument, stating:
 

 The State would, and the district court did, impermissibly impose on the defendant the Catch-22, so styled by the [Texas Court of Criminal Appeals] in
 
 Long [v. State,
 
 742 S.W.2d 302 (Tex. Crim.App.1987) ], of either calling the child-complainant to the stand at the “risk [of] inflaming the jury against [himself]” or avoiding the risk of thus inflaming the jury at the cost of waiving his constitutional right to confront and cross-examine the key witness against him. As was recognized by the [Texas Court of Criminal Appeals] in
 
 Lowery,
 
 this “no win” burden “unfairly requires the defendant to choose between his right to cross-examine a complaining witness and his right to rely on the State’s burden of proof in a criminal case.” Such a result is irreconcilable with the alternative confrontational protections blessed by the Supreme Court in
 
 Craig.
 
 The
 
 Craig
 
 opinion requires a case-specific finding of necessity before the special, alternative testimony procedures may be relied on exclusively. [Footnotes omitted.]
 

 The issue of the admissibility of a videotaped interview of a child abuse victim without the in-court testimony of the child was again presented to the Fifth Circuit in
 
 Shaw v. Collins,
 
 5 F.3d 128 (5th Cir.1993). In
 
 Shaw, supra,
 
 the defendant was convicted of aggravated sexual assault of a five-year-old child. The child was available to testify at trial, but the prosecution refused to call her as a witness. Instead, the prosecution introduced into evidence a videotaped interview of the child, over the defendant’s objection. The defendant argued that the prosecution was required to call the child as a witness in its case-in-chief, so that the defendant could cross-examine her. The state trial court overruled the objection, reasoning that if the defendant wanted to exercise his right under the Confrontation Clause, he would have | uto call the child as witness during his own case-in-chief. However, the state trial court ruled that the defendant would not be allowed to treat the child as an adverse witness. The defendant called the child to the stand, but then withdrew the request to examine her. The defendant was found guilty as charged.
 

 After exhausting his state court remedies, the defendant made an application for a writ of habeas corpus to the federal court, complaining that his Sixth Amendment rights to confront and cross-examine his accuser had been violated. The Fifth Circuit found that the prosecution’s failure to call the child to testify violated the defendant’s right of confrontation and was not harmless error. The Fifth Circuit noted that in
 
 Shaw,
 
 the videotape was the linchpin of the state’s case. The child was the only witness with first-hand knowledge of the truth and the child’s testimony was virtually uncorroborated. The Fifth Circuit also noted that during the videotaped interview, the child was not under oath and no determination of the child’s competency to testify was made prior to the videotaped interview.
 

 The Fifth Circuit stated that, as explained in the
 
 Lowery
 
 case:
 

 [T]his Court is revolted by violence— especially sex-related violence — against children. However, we are required to be ever vigilant in ensuring that the constitutionally guaranteed rights of defendants in habeas corpus cases are not violated in substantial and injurious ways. All parties agree that Robert Shaw’s Sixth Amendment rights were violated here. The record before us reveals that that violation was not a harmless one.
 

 
 *613
 
 In
 
 Offor v. Scott,
 
 72 F.3d 30 (5th Cir. 1995), the Fifth Circuit was again called upon to “pass upon a case in which a Texas court convicted a defendant of molesting a child after a trial in which the jury, over the 11^defendant’s objection, watched a videotaped interview of the victim describing the alleged acts of sexual abuse, an interview at which no representative of the defendant was present.” The Fifth Circuit held that the admission of the videotape violated the Confrontation Clause and found that the violation was not remedied by requiring the defendant to call the child in order to cross-examine. The Fifth Circuit found that the tape’s admission was not harmless error.
 

 The Fifth Circuit observed that in
 
 Offor,
 
 the victim was a troubled child who had previously fabricated allegations of sexual abuse against adults disciplining her, and noted that, if the prosecution called the child to the stand at trial, it ran the risk that the child might change or alter her story or concede a fabrication. The Fifth Circuit observed that the admission of the videotape only, without calling the child as a witness, allowed the prosecution to solve those problems neatly. The Fifth Circuit noted that the Confrontation Clause does not allow such neat solutions and stated that the Confrontation Clause assures that cross-examination permits the kind of probing and testing that makes oral testimony reliable. The fact that the prosecution’s purpose in using the videotape rather than a live witness was to protect the child does not change its effect.
 

 Recently, the Louisiana Fourth Circuit Court of Appeal considered whether the introduction into evidence of a videotaped interview of a child sexual abuse victim where the victim did not testify at trial violated the defendant’s Sixth Amendment right of confrontation. In
 
 State ex rel. D.G.,
 
 2008-0938 (La.App. 4th Cir.4/30/09), 11 So.3d 548,
 
 writ denied,
 
 2009-86 (La.6/5/09), 9 So.3d 877,
 
 cert, granted, judgment vacated, D.G. v. Louisiana,
 
 — U.S.-, 130 S.Ct. 1729 176 L.Ed.2d 176 (2010), a petition for delinquency was filed against 14-year-old D.G., charging him with sexual battery of a seven-year-old. Finding that the state proved the charges, D.G. was adjudicated a juvenile delinquent. On appeal to the Fourth Circuit, D.G. argued that the state faded to prove the elements of the offense and violated his right of confrontation.
 

 The Fourth Circuit acknowledged that there was insufficient evidence to show that D.G. committed oral sexual battery, but found that the state proved that anal sexual battery occurred. In addition to the testimony of the victim’s aunt, as the person to whom the victim made the initial complaint of sexually assaultive behavior, which was admitted as an exception to the hearsay rule under La. C.E. art. 801 D(l)(d), the state introduced a recorded interview of the victim by a social worker. D.G. claimed that, because the victim was not called to testify, D.G.’s right to confront his accuser was violated and the violation tainted virtually all the evidence against him. Although the victim was not called as a witness, he was physically present in the courthouse and there was no physical impediment to calling him as a witness.
 

 D.G. cited
 
 Lowery v. Collins, supra,
 
 and
 
 Offor v. Scott, supra,
 
 in support of his argument. The Fourth Circuit distinguished
 
 Lowery
 
 and
 
 Offor,
 
 finding that those cases involved jury trials and spoke of the potentially inflammatory effect on a jury of having the defendant call a child victim to the stand. The juvenile matter in D.G. was decided in a judge trial. | ^Accordingly, the Fourth Circuit declined to apply
 
 Lowery
 
 and
 
 Offor.
 
 The adjudication was affirmed.
 

 
 *614
 
 The United States Supreme Court granted a writ of certiorari, vacated the judgment in
 
 State ex reí. D.G., supra,
 
 and remanded the case to the Fourth Circuit for further consideration in light of
 
 Melendez-Diaz v. Massachusetts, supra.
 

 [5]
 

 In
 
 Melendez-Diaz,
 
 the Supreme Court held that the admission into evidence of certificates of state laboratory analysts stating that the material seized by the police and connected to the defendant was cocaine of a certain quantity, without the in-court testimony of the analysts, violated the defendant’s Sixth Amendment right to confront the witnesses against him. Citing
 
 Crawford v. Washington, supra,
 
 the Supreme Court found that, absent a showing that the analysts were unavailable to testify at trial
 
 and
 
 that the defendant had a prior opportunity to cross-examine them, the defendant was entitled to be confronted with the analysts at trial.
 

 The prosecution urged the Supreme Court to find that there was no violation of the Confrontation Clause because the defendant had the ability to subpoena the analysts. The Supreme Court rejected that argument stating:
 

 Respondent asserts that we should find no Confrontation Clause violation in this case because petitioner had the ability |1sto subpoena the analysts. But that power — whether pursuant to state law or the Compulsory Process Clause — -is no substitute for the right of confrontation. Unlike the Confrontation Clause, those provisions are of no use to the defendant when the witness is unavailable or simply refuses to appear. See,
 
 e.g., Davis,
 
 547 U.S., at 820, 126 S.Ct. 2266, 165 L.Ed.2d 224 (“[The witness] was subpoenaed, but she did not appear at ... trial”). Converting the prosecution’s duty under the Confrontation Clause into the defendant’s privilege under state law or the Compulsory Process Clause shifts the consequences of adverse-witness no-shows from the State to the accused. More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court. Its value to the defendant is not replaced by a system in which the prosecution presents its evidence via
 
 ex parte
 
 affidavits and waits for the defendant to subpoena the affiants if he chooses.
 

 Discussion
 

 Louisiana is one of several states that have established procedures to protect from unnecessary trauma the child victims of sexual abuse who testify at trial. See La. R.S. 15:440.1,
 
 et
 
 seq.,
 
 [6]
 
 which provides
 
 *615
 
 for electronic | ^recording of the victim’s statement. See also La. R.S. 15:283
 
 [7]
 
 ,
 

 
 *616
 
 which | appertains to the taking of witness testimony by closed circuit television, as well as La. Ch. C. arts. 322 to 329, which provide for both electronic recording of the victim’s statement and closed circuit testimony in juvenile proceedings. However, the jurisprudence demands that these procedures be followed with exactitude.
 

 As discussed in
 
 State v. Kennedy,
 
 957 So.2d at 773:
 

 Louisiana is one of many states which have developed special procedures to protect child witnesses testifying about abuse from unnecessary additional trauma, allowing videotaped statements of abused children to be admitted in court, provided certain conditions are met, La. R.S. 15:440
 
 et seq.,
 
 and allowing abused children to testify out of court via closed | ⅞1 circuit television systems, La. R.S. 15:283. However, Louisiana’s provisions creating special arrangements for abused children contain strict requirements designed to ensure that these accommodations do not compromise the rights of defendants to confront adverse witnesses and test the reliability of their testimony.
 

 In
 
 Kennedy,
 
 the Louisiana Supreme Court found La. R.S. 15:440.5 to be constitutional on its face and suggested that a defendant’s right to confrontation was preserved so long as the witness was available to testify. The victim in
 
 Kennedy
 
 testified and was able to answer the vast majority of the questions asked of her.
 

 In
 
 State v. R.C.,
 
 494 So.2d 1350 (La.App. 2d Cir.1986), a videotaped interview was conducted of a five-year-old alleged victim of an attempted aggravated rape. At the trial, the victim took the stand, but refused to repeat the details of her taped interview or to answer any specific questions about the offense. The trial court ruled that the witness was unavailable to testify and the tape was inadmissible as a denial of the right of confrontation and cross-examination. The state applied for a writ.
 

 This court in
 
 State v. R.C., supra,
 
 determined that the trial court correctly denied the admissibility of the videotape. We noted that, although the witness took the stand, answered general questions on direct examination and a few questions on cross-examination, she refused to talk about the alleged offense. We stated that cross-examination cannot be effective when it is not permitted to cover the facts of the alleged offense, noting that the child’s videotape lodged a devastating accusation against the defendant and the refusal to testify denied him the opportunity to probe the truthfulness of the words on the tape.
 

 lain conclusion, we made the following observations in
 
 State v. R.C., supra
 
 at 1356:
 

 
 *617
 
 We are sensitive to the difficulty of balancing constitutional values against societal needs, especially when the needs are expressed on behalf of the youngest and most vulnerable victims of outrageous conduct. The legislature has taken innovative action in its effort to bring the wrongdoers to justice. Effective prosecution is a major part of wiping out the blight of child molestation. However, the constitutional values remain and are reflected in the statutory scheme. Unless the statute is meticulously followed and carefully administered, the defendant’s rights would be disregarded. Here the statutory guidelines were not followed and the trial court correctly held the videotape inadmissible.
 

 In the instant case, the fact that the child witnesses were not called to the stand by the state is a fatal error to the prosecution. The United States and Louisiana Constitutions and the jurisprudence interpreting them mandate that, if a defendant timely asserts his right to confront the victim in a jury trial in which a videotaped interview under La. R.S. 15:440.5 or La. Ch. C. art. 326 is sought to be introduced, the prosecution must call the victim to testify and make an inquiry into the victim’s competency before tendering the victim for cross-examination. This testimony may be presented by closed circuit, if the requirements of La. R.S. 15:283 are met. While the Louisiana Supreme Court or the Louisiana legislature can mandate an earlier assertion of the right of confrontation under
 
 Melendez-Diaz, supra,
 
 we find that the right must be asserted at least before evidence of the videotape is introduced.
 
 [8]
 

 lijüBecause the use of the videotaped interviews, without affording the defendant an opportunity to exercise his right of cross-examination, violated the defendant’s Sixth Amendment right of confrontation and because the videotaped interviews were the linchpin of the prosecution’s case, the error in admitting them at trial was not harmless. Accordingly, we reverse the defendant’s convictions and remand the matter to the trial court for further proceedings consistent with this opinion.
 

 CONCLUSION
 

 The defendant’s convictions are reversed and vacated. The matter is remanded the matter to the trial court for further proceedings.
 

 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
 

 [1]
 

 . In addition to the assignments of error considered in this opinion, the defendant alleged that the trial court erred in allowing the hearsay testimony of Ms. Carter, the mother's caregiver. He also alleged that the evidence was insufficient to prove all the elements of the offenses charged beyond a reasonable doubt and that the trial court erred in denying his challenges for cause to two potential jurors. As discussed below, because we find
 
 *608
 
 the violations of the defendant's right of confrontation constitutes reversible error, we do not reach a consideration of these assignments of error.
 

 [2]
 

 . The defendant also asserts that the trial court erred in admitting the videotaped interviews into evidence as the state failed to establish that the videotaped interviews of the two children were authorized as required by La. R.S. 15:440.2 and thus, the girls were not "protected persons” as intended under the statute. However, we find no merit to this assignment of error. While La. R.S. 15:440.2 provides that a videotape of a statement of certain victims may be made on motion of several listed entities, the statute does not mandate that such a motion be made.
 
 State v. Guidroz,
 
 498 So.2d 108 (La.App. 5th Cir. 1986). There is no serious dispute that the children in the instant case — as alleged crime victims under the age of 17 years of age — fall within the definition of "protected person” set forth in La. R.S. 15:440.2(C). See also La. R.S. 15:283 and La. Ch. C. art. 323, which define “protected person” in the same terms.
 

 [3]
 

 . In
 
 State
 
 v.
 
 Welch,
 
 1999-1283 (La.4/11/00), 760 So.2d 317, the Louisiana Supreme Court reversed a conviction for molestation of a juvenile following a bench trial. The trial court had required the defendant to sit behind a screen so that the alleged nine-year-old victim could testify without having to see him. However, neither the state or the trial court attempted to comply with La. R.S. 15:283(A), which requires expert testimony that the child would likely suffer serious emotional distress if forced to give testimony in open court and cannot reasonably communicate his testimony to the court or jury in open court. The supreme court found that the procedure utilized by the trial court violated the defendant's right to confrontation as interpreted in
 
 Coy, supra,
 
 and
 
 Maryland v. Craig,
 
 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The supreme court found that the trial court ordered the "screening" of the defendant "merely on a
 
 generalized
 
 statement of
 
 possible
 
 trauma” to the victim. The court further found that under the facts of the case, this error could not be considered harmless. Accordingly, the defendant's conviction was reversed and the matter remanded for a new trial.
 

 [4]
 

 . See also
 
 Melendez-Diaz v. Massachusetts,
 
 - U.S. -, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), recognizing that the theory of
 
 Ohio v. Roberts, supra,
 
 that unconfronted testimony was admissible as long as it bore indicia of reliability, has been rejected.
 

 [5]
 

 . In a recently released opinion, on remand, the fourth circuit found that the facts presented in
 
 State ex rel. D.G., supra,
 
 were not violative of the reasoning in
 
 Melendez-Diaz v. Massachusetts, supra.
 
 The fourth circuit further reiterated its analysis of
 
 Lowery v. Collins, supra,
 
 and
 
 Offor v. Scott, supra,
 
 which were "distinguished by pointing out that the concern expressed in those cases was that the jury could be inflamed by a videotaped interview with the minor victim.” The fourth circuit again noted that the juvenile case of
 
 State ex rel. D.G., supra,
 
 was not a jury case.
 
 State ex reí. D.G.,
 
 2008-0938 (La.App. 4th Cir.5/27/10), 40 So.3d 409.
 

 [6]
 

 . La. R.S. 15:440.2. Authorization
 

 A. (1) A court with original criminal jurisdiction or juvenile jurisdiction may, on its own motion or on motion of the district attorney, a parish welfare unit or agency, or the Department of Social Services, require that a statement of a protected person who may have been a witness to or victim of a crime be recorded on videotape.
 

 (2) Further, the coroner may, in conjunction with the district attorney and appropriate hospital personnel and pursuant to their duties in R.S. 40:2109.1 and 40:2113.4, provide for the videotaping of protected persons who are rape victims or who have been otherwise physically or sexually abused.
 

 
 *615
 
 (3)Such videotape shall be available for introduction as evidence in a juvenile proceeding or adult criminal proceeding.
 

 B. For purposes of this Part, “videotape” means the visual recording on a magnetic tape, film, videotape, compact disc, digital versatile disc, digital video disc, or by other electronic means together with the associated oral record.
 

 C. For purposes of this Part "protected person” means any person who is a victim of a crime or a witness in a criminal proceeding and who is either of the following:
 

 (1) Under the age of seventeen years.
 

 (2) Has a developmental disability as defined in R.S. 28:451.2(12).
 

 La. R.S. 15:440.4. Method of recording videotape; competency
 

 A. A videotape of a protected person may be offered in evidence either for or against a defendant. To render such a videotape competent evidence, it must be satisfactorily proved:
 

 (1) That such electronic recording was voluntarily made by the protected person.
 

 (2) That no relative of the protected person was present in the room where the recording was made.
 

 (3) That such recording was not made of answers to interrogatories calculated to lead the protected person to make any particular statement.
 

 (4) That the recording is accurate, has not been altered, and reflects what the protected person said.
 

 B. The department shall develop and promulgate regulations on or before September 12, 1984, regarding training requirements and certification for department personnel designated in Paragraph (A)(5) of this Section who supervise the taking of the protected person's statement.
 

 La. R.S. 15:440.5. Admissibility of videotaped statements; discovery by defendant A. The videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if:
 

 (1) No attorney for either party was present when the statement was made;
 

 (2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
 

 (3) The recording is accurate, has not been altered, and reflects what the witness or victim said;
 

 (4) The statement was not made in response to questioning calculated to lead the protected person to make a particular statement;
 

 (5) Every voice on the recording is identified;
 

 (6) The person conducting or supervising the interview of the protected person in the recording is present at the proceeding and available to testify or be cross-examined by either party;
 

 (7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and
 

 (8) The protected person is available to testify.
 

 B. The admission into evidence of the videotape of a protected person as authorized herein shall not preclude the prosecution from calling the protected person as a witness or from taking the protected person's testimony outside of the courtroom as authorized in R.S. 15:283. Nothing in this Section shall be construed to prohibit the defendant's right of confrontation.
 

 [[Image here]]
 

 [7]
 

 . La. R.S. 15:283 provides:
 

 A. On its own motion or on the motion of the attorney for any party, a court may order that the testimony of a protected person who may have been a witness to or victim of a crime be taken in a room other than the courtroom and be simultaneously televised by closed circuit television to the court and jury, when the court makes a specific finding of necessity based upon both of the following:
 

 (1) Expert testimony that the protected person would be likely to suffer serious emotional distress if forced to give testimony in open court.
 

 (2) Expert testimony that, without such simultaneous televised testimony, the protected person cannot reasonably communicate his testimony to the court or jury.
 

 B. The court shall ensure that the protected person cannot see or hear the accused unless such viewing or hearing is requested for purposes of identification. However, the court shall ensure that the accused is
 
 *616
 
 afforded the ability to consult with his attorney during the testimony of the protected person.
 

 C.The only persons who may be present in the room with the protected person are the person or persons operating the audio-video equipment, the presiding judge, the attorneys for the state, the attorneys for the defendant, and any person, other than a relative of the protected person, whose presence is determined by the court to be necessary to the welfare and well-being of the protected person during his testimony. The persons operating the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the protected person during his testimony but does not permit the protected person to see or hear them.
 

 D. Only the attorneys, or the presiding judge as authorized by law, may question the protected person.
 

 E. For the purposes of this Section, "protected person” means a person who is the victim of a crime or a witness in a criminal prosecution who is either of the following:
 

 (1) Under the age of seventeen years.
 

 (2) Has a developmental disability as defined in R.S. 28:451.2(12).
 

 [8]
 

 . We contemplate that a trial judge could require that the right to confrontation be asserted pretrial, after the defendant or defense counsel has been afforded the opportunity to view the recording, under the guidance of
 
 Melendez-Diaz, supra.