NORRIS, Judge.
This is a petition to adjudicate a juvenile delinquent for the attempted aggravated rape of a five-year old child, LSA-R.S. 14:27, 42. The defendant, R.C. Jr., is a 16-year old minor. The state prepared and tendered for admission a videotaped interview of the victim by a DHHR Child Protection Investigator, pursuant to LSA-R.S. 15:440.5. At the adjudication hearing, the victim took the stand and testified that what she said on the tape was correct. She refused, however, to repeat the details of her taped testimony or to answer any specific questions about the offense. At that point the trial court ruled that the witness was unavailable to testify and the tape inadmissible as a denial of confrontation and cross-examination. LSA-Const. Art. I, § 16; LSA-R.S. 15:440.5A(8). The state applied for a writ which we granted and placed on the regular docket. For the reasons expressed, we now recall the writ and remand the case.
FACTS
On July 23, 1985, the victim’s parents reported to the sheriffs department in Mansfield that their five-year old daughter had told them of some type of sexual encounter with R.C. Jr., their next-door neighbor. The child was taken to Dr. Dillard for an examination and then interviewed by Marsha Golden of the DHHR Child Protection Agency. Based on the information from the child’s mother and from Ms. Golden, the officer got an arrest warrant for R.C. Jr. In November the trial court conducted a preliminary examination and determined that the victim was competent to testify. In December, R.C. Jr. pled nolo contendere to the petition.[1] On February 7, 1986, when the probation officer recommended a disposition, R.C. Jr. withdrew his nolo answer.
On March 6, the trial court held a hearing on the defendant’s motion to determine the admissibility of the videotaped interview of the victim by Ms. Golden. Ms. Golden testified that she conducted the interview on July 23, 1985 with the girl, and had also interviewed the girl’s baby brother on July 26. The judge found that Ms. Golden’s questioning of the child was proper under the applicable regulations, LSA-R.S. 15:440.4.[2] The defendant objected to admitting the tape, arguing that although the child was present and had testified at a prior hearing, she now refused to answer some of the questions on cross-examination. Thus, he argued, the victim was “unavailable” for cross-examination. The judge overruled the objection but added that if the child refused to answer questions at trial or at a later hearing, he would reverse his ruling.
The adjudication hearing began on April 11. The victim was called by the state as a witness. On direct examination, she referred to the defendant as “Junior,” his nickname, and identified him. She testified that she had related the incident to her mother and to Ms. Golden and that if she were asked the same questions as Ms. Golden had asked her before, she would give the same answers. R.p. 66. She said, however, that she did not want to tell about the incident all over again and that she did not want to tell about it in the courtroom. She remembered making the videotape and said that the things she told about on the tape had happened at her home. She told her mother about the incident first. The defense again objected to admitting the tape, but the court deferred ruling until it had viewed the tape and the victim had *1352 been given the opportunity to respond to cross-examination.
After the tape was played, the victim answered more questions on direct examination. The defense then began its cross-examination. The child victim said she would not talk about the incident.[3] She nevertheless did eventually answer a few questions. She said she had known the defendant since her family had moved next door to his house. She tried to explain where her mother and father were when the incident took place. She said the defendant pulled her pants down. When asked what happened next, she said that she forgot and did not want to talk about it. R.p.p. 80, 81. The defense ceased questioning. The court then ruled the tape inadmissible and granted leave to apply for writs.
DISCUSSION
The issue is whether the victim’s refusal to submit to effective cross-examination made her unavailable to testify under the statute and thereby rendered the prior videotaped interview inadmissible. We have examined the purpose and background of the statute, in light of its constitutional connotations, to determine what “availability” means and whether the trial court correctly applied it to the instant case.
The constitutional background is apparent. The U.S. Constitution provides that “In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.” U.S.C.A.-Const. amend. 6. Our state Constitution similarly provides, “An accused is entitled to confront and cross-examine the witnesses against him * * LSA-Const. Art. I § 16. Our state’s specific inclusion of cross-examination as a guarantee obviates the need to assert its validity through judicial analysis. See e.g., Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
In child abuse cases, the right of confrontation creates complex problems. Usually there is only one witness with personal knowledge of the facts to prove the state’s case, and this witness is the child victim. Harsh confrontation or cross-examination seems inappropriate for a very young child who has already suffered, as alleged by the state, great trauma by the incident of abuse. The victim is further traumatized by the prospect of testifying in a courtroom setting and in front of her abuser. The in-court experience may cause lasting emotional harm. See Libai, “The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System,” 15 Wayne L.Rev. 977 (1969); Ordway, “Proving Parent-Child Incest,” 15 U. of Mich.J. of L.Reform 131 (Fall 1981); State v. Sheppard, 197 N.J.Super. 411, 484 A.2d 1330 (1984). Furthermore, a young child who is otherwise competent to testify may have difficulty expressing in clear terms the unfamiliar and unpleasant events that have occurred. State v. Sheppard, supra.
Courts have therefore had to grapple with the need to allow the child to testify in a supportive, nontraumatic environment while still allowing the defendant his guarantee of confrontation. The best solution, from the standpoint of child protection, is to permit the child to testify in a small, private place, surrounded only by cooperative people like social workers or physicians, and not faced by the accused. This would theoretically produce the most relaxed atmosphere for testifying. To admit this alone, however, would plainly deprive the defendant of confrontational rights. Courts have therefore attempted various *1353 methods of adducing a child’s testimony in a relaxed surrounding without relaxing the constitutional mandates. The California case of Hebert v. Superior Court, 117 Cal.App.3d 661, 172 Cal.Rptr. 850 (Cal.App. 3d Dist.1981) shows the paramount status of confrontation. The defendant, charged with oral copulation with a minor, was seated in the courtroom in such a way that he could hear, but not see, the witness. The court found that this procedure did not satisfy the confrontation requirement, reasoning that the child’s reluctance to face the defendant may be more a sign of fabrication than of fear or embarrassment. We agree that the concern for fabrication is great when the case can be made on the victim’s testimony alone. Other techniques have been more successful. In Parisi v. Superior Court, 144 Cal.App.3d 211, 192 Cal.Rptr. 486 (Cal.App. 2d Dist.1983), the child victim of alleged lewd acts and rape by force or fear was seated where the defendant could face her. She was allowed to whisper her testimony to the magistrate who announced it to the court. This method was approved. Two very recent cases have approved the use of live testimony by closed-circuit T.V. where full cross-examination is allowed. State v. Warford, 223 Neb. 368, 389 N.W.2d 575 (1986); Comm. v. Willis, 716 S.W.2d 224 (1986). In both of these cases, the only abridgment of a sixth amendment right was the lack of face-to-face confrontation.
Another method that has generated considerable judicial experience is videotaping the victim’s testimony. This method is helped by the convenience and familiarity of videotape equipment. The lead case on videotaping was not a trial for child abuse. In United States v. Benfield, 593 F.2d 815 (8th Cir.1979), the witness in a trial for misprision of a felony testified by means of a pre-trial videotaped deposition at which the defendant could be present “but not within the vision of” the witness. The defendant was excluded from the room where the deposition took place, but he could view and hear the proceedings on a monitor. He could halt the questioning by sounding a buzzer, at which time the deposition would be interrupted and his attorney would leave the room to confer with him. The attorney was permitted to cross-examine the witness, but the witness was apparently kept unaware that the defendant was present in the building. The court of appeals discussed the rights explicit and inherent in the sixth amendment. It found that in some undefined but real way, recollection, veracity and communication are influenced by face-to-face challenge. This feature is part of the sixth amendment’s right, additional to the right of cold, logical cross-examination by one’s counsel. The court concluded,
While a deposition necessarily eliminates a face-to-face meeting between witness and jury, we find no justification for further abridgment of the defendant’s rights. A videotaped deposition supplies an environment substantially comparable to a trial, but where the defendant was not permitted to be an active participant in the video deposition, this procedural substitute is constitutionally infirm. 593 F.2d at 821 (footnote omitted)
Other courts, however, have shown less adherence to the face-to-face formula of the sixth amendment when the delicate area of child abuse is involved. The lead case in favor of physically separating the victim from the defendant at trial is State v. Sheppard, 197 N.J.Super. 411, 484 A.2d 1330 (1984). The Sheppard court began its scholarly analysis by noting that sixth amendment rights, though important, are not absolutes. See, e.g., United States v. Tortora, 464 F.2d 1202 (2d Cir.1972), cert. denied 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972); United States v. Toliver, 541 F.2d 958 (2d Cir.1976); Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Sixth amendment rights may therefore be balanced against other important factors. The court discussed these factors, especially the possible trauma of a typical confrontation and the improved accuracy of testimony adduced in favorable surroundings. We note, however, that the technique employed in Sheppard, a closed circuit transmission simulta *1354 neously broadcast to the court, while abridging the defendant’s face-to-face right, nevertheless conformed to sixth amendment principles in every other respect. The prosecutor and the defense attorney were in the same room with the child and the defense was allowed full cross-examination. Only the defendant, the judge and the jury were removed. The defense could pursue any line of questions it desired, and more importantly, it had contemporaneous cross-examination covering actual testimony. Against this legal and factual background the Sheppard court held that a child victim of sexual abuse may be presented by closed circuit T.V. as an exception to face-to-face confrontation. The court also held that use of the video technique is a permissible restriction of confrontation. 484 A.2d at 1349. The court finally held that the defendant, Mr. Sheppard, had validly waived his right of confrontation by his other conduct. We think this latter holding dilutes the value of the court’s reasoning on video techniques. The Sheppard court apparently would have accepted the testimony on the basis of waiver even without carving new exceptions to the sixth amendment. The waiver, plus the fact that the defendant in Sheppard could pursue simultaneous cross-examination of actual testimony, make the Sheppard rationale distinguishable from the pre-trial interview, videotaped without the benefit of cross-examination, at issue in the instant case.
An Arizona appeals court has squarely addressed the issue of admitting a videotape of the child victim conducted before trial. State v. Melendez, 135 Ariz. 390, 661 P.2d 654 (Ariz.App. 2d Div.1982). In Melendez, both the defendant and his attorney were present when the tape was recorded. They had the opportunity to cross-examine the witness simultaneously. Furthermore, the state introduced testimony of a clinical psychologist who said the witness would become uncommunicative in front of a jury. Thus the state established a clear and convincing need for the videotape procedure. A similar showing of need was made in the Warford and Willis cases, supra. Both of these factors, simultaneous cross-examination and a showing of need, are crucial to the holding and are grounds to distinguish Melendez from the instant case.
LOUISIANA’S STATUTE
Sensitive to the competing interests of the defendant’s confrontational rights, the victim’s right against harassment, and the quest for the most truthful testimony, the legislature enacted a statute permitting the videotaping of oral statements by children who are victims of sexual abuse. LSA-R.S. 15:440.1-440.6, added by Acts 1984, No. 563. § 440.5 sets out eight requirements for admitting a tape. We have analyzed them in terms of the particular interests they seek to serve. The statute provides as follows:
§ 440.5. Admissibility
A. The videotape of an oral statement of the child made before the proceeding begins may be admissible into evidence if:
(1) No attorney for either party was present when the statement was made.
(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;
(4) The statement was not made in response to questioning calculated to lead the child to make a particular statement;[4]
*1355 (5) Every voice on the recording is identified;
(6) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;
(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and
(8) The child is available to testify.
B. The admission into evidence of the videotape of a child as authorized herein shall not preclude the prosecution from calling the child as a witness or taking the child’s testimony outside of the courtroom as authorized in R.S. 15:283. Nothing in this Section shall be construed to prohibit the defendant’s right of confrontation. (emphasis supplied)
The first requirement protects the child against harrassment. It presumes that a “minimum of additional intrusion into the life” of the child is in the child’s best interest, without requiring any special showing of damage or harm that might result from an in-court appearance. See LSA-R.S. 15:440.1. The next four requirements assure accuracy. The final three attempt to preserve the defendant’s right of confrontation and cross-examination. Every one of these requirements must be satisfied before a tape may be admitted.[5] We particularly note the interplay of (1) and (8). The tape is prepared in an environment completely void of intimidating forces, as no attorneys are present, but this equates to a voidness of sources of confrontation. In order to legitimize the scheme, the legislature mandated that the child be available to testify. This is absolutely essential to provide for constitutional confrontation and cross-examination.
In plain terms, requirement (8) addresses only availability, but it must be read in connection with subsection (B) to convey the full panoply of rights that would satisfy the constitution. This means a right of effective cross-examination. See Davis v. Alaska, supra; Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); State v. Hillard, 398 So.2d 1057 (La.1981), on remand 421 So.2d 220 (La.1982). By “effective cross-examination” we mean questioning that addresses the facts that give rise to the alleged offense and testimony that is responsive to the questioning, regardless of whether the testimony benefits the defense. Mere physical presence is not sufficient under the instant circumstances where the tape was made without the benefit of cross-examination. This eliminates the main indicium of reliability, and places the witness in a position to incriminate the defendant with impunity. The statute recognizes that when the other factors are relaxed, the right of confrontation must be carefully guarded.
We have not been asked to rule on the constitutionality of this statutory scheme.[6] *1356 It is not without difficulty because it so severely compromises the defendant’s constitutional rights. We need not reach the issue, however, because the requirements of the statute were not met in the trial court and the trial judge correctly ruled. The witness was not available for effective cross-examination. Although she took the stand, answered general questions on direct and a few questions on cross, she refused to talk about the alleged offense. Cross-examination can not be effective when it is not permitted to cover the facts of the alleged offense. The child’s videotape lodged a devastating accusation against the defendant; the refusal to testify denied him the opportunity to probe the truthfulness of the words on the tape.
The state argues that because the child was present in the courtroom, took the stand and answered some of the questions, then she was in fact available and that the trial court erred in holding otherwise. We have never faced the question in quite this context. Under the law of hearsay, prior testimony becomes admissible only if the speaker is unavailable at trial and if the party against whom the testimony is offered had an opportunity to cross-examine the witness at the previous hearing. Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Thus in regular hearsay cases the state always strives to prove the speaker unavailable. The cases nevertheless hold that the trial court’s determination of availability is entitled to great discretion. State v. Pearson, 336 So.2d 833 (La.1976); State v. Ghoram, 328 So.2d 91 (La.1976); State v. Nall, 439 So.2d 420 (La.1983). A witness may be physically present in the courtroom and still be unavailable. State v. Pearson, supra; State v. Ghoram, supra; State v. Nall, supra; State v. New Orleans Waterworks Co., 107 La. 1, 31 So. 395, writ dismissed 185 U.S. 336, 22 S.Ct. 691, 46 L.Ed. 936 (1902). We think the trial court’s discretion should not be diminished simply because the result would be to exclude, rather than to admit, an out-of-court statement. In light of the constitutional underpinnings, the trial court was correct to hold the state to a heightened showing of availability, and he did not abuse his great discretion. The decision necessitates holding the tape inadmissible.
The state also cites in its behalf the recent case of State v. Feazell, 486 So.2d 327 (La.App. 3d Cir.1986), writ denied 491 So.2d 20 (La.1986), for the proposition that LSA-R.S. 15:440.5 is constitutional. Feazell is plainly distinguishable on the grounds that the defendant there “thoroughly” cross-examined the child. 486 So.2d at 327. In the instant case, the statutory requirements were not met.
CONCLUSION
We are sensitive to the difficulty of balancing constitutional values against societal needs, especially when the needs are expressed on behalf of the youngest and most vulnerable victims of outrageous conduct. The legislature has taken innovative action in its effort to bring the wrongdoers to justice. Effective prosecution is a major part of wiping out the blight of child molestation. However, the constitutional values remain and are reflected in the statutory scheme. Unless the statute is meticulously followed and carefully administered, the defendant’s rights would be disregarded. Here the statutory guidelines were not followed and the trial court correctly held the videotape inadmissible.
For these reasons we recall the writ and remand the case for further proceedings.
WRIT RECALLED; CASE REMANDED.

. R.C. Jr. had originally denied the allegations of the petition and then changed his answer. R.p.p. 1, 4.

. The statute is quoted in fn. 4 below.

. The following colloquy occurred:
A (The witness nodded her head.)
Q And I am [R.C. Jr.'s] lawyer. Now, if I want to ask you some questions, are you going to talk to me about this:
A (The witness did not reply.)
Q If I ask you some specific things — will you tell me what happened?
A (The witness shrugged her shoulders.) I don’t want to.
Q Well, we understand that you don’t want to, but will you talk to me and tell me all about it?
A (The witness shrugged her shoulders.)
Q You won’t talk to me about it?
A (The witness shook her head.) R.p. 77

. LSA-R.S. 15:440.4 provides:
§ 440.4. Method of recording videotape; competency
A. A videotape of a child fourteen years of age or under may be offered in evidence, either for or against a defendant charged with the rape or physical or sexual abuse of a child. To render such a videotape competent evidence, it must be satisfactorily proved:
(1) That electronic recording was voluntarily made by the victim of the physical or sexual abuse.
(2) That no relative of the victim of the physical or sexual abuse was present in the room where the recording was made.
*1355 (3) That such recording was not made of answers to interrogatories calculated to lead the child to make any particular statement.
(4) That the recording is accurate, has not been altered, and reflects what the witness or victim said.
(5) That the taking of the child’s statement was supervised by a physician, a board-certified social worker, a law enforcement officer, or an authorized representative of the Department of Health and Human Resources.
B. The department shall develop and promulgate regulations on or before September 12, 1984, regarding training requirements and certification for department personnel designated in Paragraph (A)(5) who supervise the taking of the child’s statement.

. Louisiana's statute is almost identical to a Texas statute, Vernon’s Ann.Tex.C.C.P. art. 38.-071 § 2. Louisiana’s statute provides that the videotape "may be” admissible if the eight requirements are met, while Texas’s statute says the videotape "is” admissible. Also different from Louisiana’s statute is the Texas subsection (b), which provides:
(b) If the electronic recording of the oral statement of a child is admitted into evidence under this section, either party may call the child to testify, and the opposing party may cross-examine the child.

. One Texas Court of Appeals has twice held art. 38.071 § 2 unconstitutional. Powell v. State, 694 S.W.2d 416 (Tex.App. 5th Dist.1985); Long v. State, 694 S.W.2d 185 (Tex.App. 5th Dist. 1985). Other Texas courts have apparently upheld the statutory procedure where the child was "available” to testify but the defendant did *1356 not call her. Jolly v. State, 681 S.W.2d 689 (Tex.App. 14th Dist.1984), cert. granted; Alexander v. State, 692 S.W.2d 563 (Tex.App. 11th Dist.1985); Tolbert v. State, 697 S.W.2d 795 (Tex.App. 1st Dist.1985). Subsequent cases have declined to follow Jolly. See Lawson v. State, 697 S.W.2d 803 (Tex.App. 1st Dist.1985); Lawson v. State, 697 S.W.2d 799 (Tex.App. 1st Dist.1985).