Cooks, J.,
dissenting.
| defendant and four other men lived in the same household as the alleged victim and her younger sister. They were all Guatemalans working in the U.S. The victim’s mother was in Guatemala and was not permitted to return to the U.S. after visiting her native land with her other children. The victim was left in the care of Defendant’s nephew, the mother’s boyfriend. She alleged Defendant began inappropriately touching her when she was in the second grade and such behavior continued for about a year every day after school. The victim testified her younger sister was sometimes present in the bedroom when Defendant engaged in the alleged behavior. Both the victim and her sister were interviewed at Hearts of Hope in 2014, after the alleged abuse was disclosed to the lady who is now the victim’s foster parent. The victim was 8 years old at the time of the interview. The victim’s taped interview was introduced into evidence but *532 the interview of her younger sister was not nor was she called as a witness by the state. Defendant did not subpoena the younger sister or the tape of her interview apparently relying on the state’s pretrial representations that her taped interview would be presented as evidence and she would be called as a witness for the state.
| 2Pefendant asserts the trial court erred in 1) severely limiting his cross-examination of the victim by imposing a ten minute time limit after he had cross-examined the victim for about 30-40 minutes; and 2) by directing the foster mother to stand behind the victim during the remaining time permitted for cross-examination. Under the limitations imposed by the trial court Defendant’s attorney refused to continue to cross-examine the victim. He moved for a stay of the proceedings and an opportunity to file writs with this court on the issues concerning cross-examination of the victim but the trial court refused his request. The case proceeded without further cross-examination of the victim.
Defendant asserts he was attempting to demonstrate contradictions and inconsistencies in the victim’s testimony compared to her taped interview and her in-court testimony. The record reveals, and the majority acknowledges, that during the cross-examination of the victim defense counsel obtained contradictory testimony. The victim stated in her out-of-court interview and in her in-court testimony that Defendant took she and her sister to Pennsylvania to place them in the care of their aunt. Under cross-examination of this witness it was determined that there were two trips to Pennsylvania and neither was with Defendant. One was with her mother, and one with her mother’s boyfriend, Orbelio Ramirez, Defendant’s nephew. The State objected during cross-examination of the child to what he termed the extensive cross-examination regarding the trips to Pennsylvania. The trial judge overruled that objection. Following that objection defense counsel moved on to questions regarding when, what time, and with whom the child would return from school. During a bench conference the state again objected to defense’s cross-examination of the child because counsel was going over “a million details about what time she comes home from school, who picks 1¡¡her up.. The trial court also overruled that objection. When defense counsel resumed cross-examination he went straight to the witness’ video deposition. After a few questions on that subject defense counsel offered to take a break in the questioning apparently in deference to the young witness. The witness acknowledged she would like that. The court took a ten minute recess. Following this break, the state informed the trial judge that the witness had “broken down” and could not be subjected to any more questioning. It was at this point the trial judge came up with the notion to have the witness continue testifying with her foster mother standing behind her, and to limit the remaining cross-examination to ten to fifteen minutes. Defendant maintains he could not risk the jury being prejudiced by having the foster mother stand behind the child during the remaining cross-examination. He also asserts that severely limiting his time frame to complete cross-examination would render it ineffective. He feared continuing under these requirements would prove detrimental to his client’s right to confrontation. He thus declined to continue his cross-examination of the child witness.
It is important to note in this case that the victim’s recorded interview concerning the alleged abuse was introduced as evidence. There clearly was no opportunity for Defendant to cross-examine the victim in that setting. I believe this fact adds to the heightened significance of affording *533 Defendant his right to fully and completely cross-examine this witness.
Both the U.S. Constitution and the Louisiana State Constitution guarantee criminal defendants the right to confront witnesses against them. The Louisiana Constitution specifically states: “An accused is entitled to confront and cross-examine the tvitnesses against him, to compel the attendance of witnesses, to | ¿present a defense, and to testify in his own behalf.” La. Const. Art. 1, § 16 (1974) (emphasis added). The Sixth Amendment to the U.S. Constitution, the Confrontation Clause, made applicable to the states by the Fourteenth Amendment, states: “In all criminal prosecutions the accused shall enjoy the right ... to be confronted with the witnesses against him.” Michigan v. Bryant, 562 U.S. 344, 353, 131 S.Ct. 1143, 1152, 179 L.Ed.2d 93 (2012), citing Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The United States Supreme Court has addressed the constitutional significance of the Confrontation Clause and finds fall and complete cross-examination of a witness the very foundation of that right, even superior to actual face-to-face confrontation in the courtroom.
In Maryland v. Craig, 497 U.S. 836, 845-47, 110 S.Ct. 3157, 3163-64, 111 L.Ed.2d 666 (1990) (emphasis added) Justice O’Connor, writing for the majority, in a case involving sexual abuse of a child, explained:
The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. The word “confront,” after all, also means a clashing of forces or ideas, thus carrying with it the notion of adversariness. As we noted in our earliest case interpreting the Clause:
The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. Mattox[v. United States], supra, 156 U.S. [237, ]at 242-243, 15 S.Ct. [337, ]at 339-340[, 39 L.Ed. 409 (1895) ].
| sAs this description indicates, the right guaranteed by the Confrontation Clause includes not only a “personal examination,” 156 U.S. at 242, 15 S.Ct. at 339, but also “(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the ‘greatest legal engine ever invented for the discovery of truth’; [and] (3) permits the jury that is to decide the defendant’s fate to observe the demean- or of the witness in making his statement, thus aiding the jury in assessing his credibility.” [California v. ]Green, supra, 399 U.S. [149, ]at 158, 90 S.Ct. [1930, ]at 1935[, 26 L.Ed.2d 489 (1970) ] (footnote omitted).
The combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observa *534 tion of demeanor by the trier of fact— serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings. See [Kentucky v. ]Stincer, supra, 482 U.S. [730, ]at 739, 107 S.Ct. [2658, ]at 2664[, 96 L.Ed.2d 631 (1987) ] (“[T]he right to confrontation is a functional one for the purpose of promoting reliability in a criminal trial”); Dutton v. Evans, 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) (plurality opinion) (“[T]he mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that ‘the trier of fact [has] a satisfactory basis for evaluating the truth of the [testimony]”’); Lee v. Illinois, 476 U.S. 530, 540, 106 S.Ct. 2056, 2061, 90 L.Ed.2d 514 (1986) (confrontation guarantee serves “symbolic goals” and “promotes reliability”); see also Faretta v. California, 422 U.S. 806, 818, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562 (1975) (Sixth Amendment “consti-tutionalizes the right in an adversary criminal trial to make a defense as we know it”); Strickland v. Washington, 466 U.S. 668, 684-685, 104 S.Ct. 2052, 2062-2063, 80 L.Ed.2d 674 (1984).
We have recognized, for example, that face-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person. See Coy, supra, 487 U.S. at 1019-1020, 108 S.Ct. at 2802 (“It is always more difficult to tell a lie about a person ‘to his face’ than ‘behind his back.’ ... That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult”); Ohio v. Roberts, 448 U.S. 56, 63, n. 6, 100 S.Ct. 2531, 2537 n. 6, 65 L.Ed.2d 597 (1980); see also 3 W. Blackstone, Commentaries * 373-* 374. We have also noted the strong symbolic purpose served by requiring adverse witnesses at trial to testify in the accused’s presence. See Coy, 487 U.S. at 1017, 108 S.Ct. at 2801 (“[T]here is something deep in human nature that regards face-to-face confrontation between accused hand accuser as ‘essential to a fair trial in a criminal prosecution’ ”) (quoting Pointer v. Texas, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)).
In Craig, the U.S. Supreme Court stressed the significance of “full and fair” cross-examination as the mechanism to satisfy the requirement of the Confrontation Clause:
“[T]he Confrontation Clause is generally satisfied when the defense is, given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evar sion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness’ testimony”); Roberts, supra, 448 U.S. at 69, 100 S.Ct. at 2540 (oath, cross-examination, and demeanor provide “all that the Sixth Amendment demands: ‘substantial compliance with the purposes behind the confrontation requirement’ ”) (quoting Green, supra, 399 U.S. at 166, 90 S.Ct. at 1939); see also Stincer, 482 U.S. at 739-744, 107 S.Ct. at 2664-2667 (confrontation right not violated by exclusion of defendant from competency hearing of child witnesses, where defendant had opportunity for full and effective cross-examination at trial); Davis v. Alaska, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1109-1110, 39 L.Ed.2d 347 *535 (1974); Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); Pointer, supra, 380 U.S. at 406-407, 85 S.Ct. at 1069; 5 J. Wigmore, Evidence § 1395, p. 150 (J. Chadbourn rev. 1974).
Maryland v. Craig, 497 U.S. 836 at 847, 110 S.Ct. 3157.
The court in Craig was faced with determining the constitutionality of a Maryland statute which allowed the court to permit a child witness to testify by closed circuit television based upon a showing by the state that the child witness “would suffer ‘serious emotional distress such that the child cannot reasonably communicate.’ ” Craig at 856, 110 S.Ct. 3157, (citations omitted). The court emphasized there must be “a case-speciñc finding of necessity” Craig at 857, 110 S.Ct. 3157 (citations omitted) to justify use of the closed circuit process. It also stressed the absolute necessity of full and effective cross-examination of the child witness in such circumstances:
In sum, we conclude that where necessary to protect a child witness from trauma that would be caused by testifying in the physical |7presence of the defendant, at least where such trauma would impair the child’s ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation. Because there is no dispute that the child witnesses in this case testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified, we conclude that, to the extent that a proper finding of necessity has been made, the admission of such testimony would be consonant with the Confrontation Clause.
Craig, 497 U.S. at 857, 110 S.Ct. 3157 (emphasis added).
Louisiana has provided by statute the procedures available to a trial court, and the level of proof needed to invoke such procedures, to protect child abuse witnesses from being further traumatized by in-court proceedings. In State v. Carper, 45,178 pgs. 18-20, (La.App. 2 Cir. 6/9/10, 18-22), 41 So.3d 605, 614-17, writ denied, 2010-1507 (La. 9/3/10), 44 So.3d 708 (emphasis added) (footnotes omitted), our sister circuit court of appeal discussed the statutory provisions as follows:
Louisiana is one of several states that have established procedures to protect from unnecessary trauma the child victims of sexual abuse who testify at trial. See La. R.S. 15:440.1, et seq which provides for electronic recording of the victim’s statement. See also La. R.S. 15:283, which pertains to the taking of witness testimony by closed circuit television, as well as La. Ch. C. arts. 322 to 329, which provide for both electronic recording of the victim’s statement and closed circuit testimony in juvenile proceedings. However, the jurisprudence demands that these procedures be followed with exactitude.
As discussed in State v. Kennedy, 957 So.2d [757, ]at 773[ (2007) ]:
Louisiana is one of many states which have developed special procedures to protect child witnesses testifying about abuse from unnecessary additional trauma, allowing videotaped statements of abused children to be admitted in court, provided certain conditions are met, La. R.S. 15:440 et seq., and allowing abused children to testify out of court via closed circuit television systems, La. R.S. 15:283. However, Louisiana’s provisions *536 | Rcreating special arrangements for abused children contain strict requirements designed to ensure that these accommodations do not compromise the rights of defendants to confront adverse witnesses and test the reliability of their testimony.
In Kennedy, the Louisiana Supreme Court found La. R.S. 15:440.6 to be constitutional on its face and suggested that a defendant’s right to confrontation was preserved so long as the witness was available to testify. The victim in Kennedy testified and was able to answer the vast majority of the questions asked of her.
In State v. R.C., 494 So.2d 1350 (La. App. 2d Cir.1986), a videotaped interview was conducted of a five-year-old alleged victim of an attempted aggravated rape. At the trial, the victim took the stand, but refused to repeat the details of her taped interview or to answer any specific questions about the offense. The trial court ruled that the witness was unavailable to testify and the tape was inadmissible as a denial of the right of confrontation and cross-examination. The state applied for a writ.
This court in State v. R.C., supra, determined that the trial court correctly denied the admissibility of the videotape. We noted that, although the witness took the stand, answered general questions on direct examination and a few questions on cross-examination, she refused to talk about the alleged offense. We stated that cross-examination cannot be effective when it is not permitted to cover the facts of the alleged offense, noting that the child’s videotape lodged a devastating accusation against the defendant and the refusal to testify denied him the opportunity to probe the truthfulness of the words on the tape.
In conclusion, we made the following observations in State v. R.C., supra at 1356:
We are sensitive to the difficulty of balancing constitutional values against societal needs, especially when the needs are expressed on behalf of the youngest and most vulnerable victims of outrageous conduct. The legislature has taken innovative action in its effort to bring the wrongdoers to justice. Effective prosecution is a major part of wiping out the blight of child molestation. However, the constitutional values remain and are reflected in the statutory scheme. Unless the statute is meticulously followed and carefully administered, the defendant’s rights would be disregarded. Here the statutory guidelines were not followed and the trial court correctly held the videotape inadmissible.
In State v. Day, 14-708 (La.App. 3 Cir. 12/23/14), 158 So.3d 120, this court upheld the tidal court’s refusal to appoint a third psychological expert to examine a child abuse victim to determine the need for him to testify by closed circuit television to avoid further trauma to him. The panel found there was a sufficient showing by both experts in the case regarding the necessity of such a measure and found Defendant’s right to confrontation of this child witness was satisfied because “[A]ll elements of confrontation [were] preserved [during G.H.’s testimony] except the ability of [G.H.] to see the defendant and the jury.” Day at 134, citing State v. Daniels, 484 So.2d 941, 944 (La.App. 1 Cir. 1986). This court recognized in Day what the Louisiana Supreme Court made clear in State v. Welch, 99-1283 (La. 4/11/00), 760 So.2d 317, echoing the holdings of the United States Supreme Court, regarding the fundamental requirement of full and effective cross-examination as the means *537 to ensure a defendant’s constitutional right of confrontation of witnesses. In Welch the Louisiana Supreme Court reversed the lower court’s conviction for molestation of a juvenile over whom the accused had control or supervision, a violation of La. R.S. 14:81.2. In that case the defendant was placed behind a shield during the child victim’s testimony. The defendant objected, but the court proceeded with the child’s testimony with the defendant seated behind a shield so that the witness could not see him during his testimony. The state supreme court relied on the U.S. Supreme Court’s holding and reasoning in Craig requiring that the state must “make an adequate showing of necessity [that] the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the Imabsence of face-to-face confrontation with the defendant.” Welch at 821. Noting that the finding of necessity is case-specific the state supreme court held:
The trial court must hear evidence and determine whether the special procedure is necessary to protect the child witness from trauma caused by the presence of the defendant. It is not sufficient for the trial court to find that the witness needs protection from courtroom trauma generally. In addition, “the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, ie„ more than ‘mere nervousness or excitement or some reluctance to testify.’ ” Id. at 856, 110 S.Ct. at 3169.
In accordance with these Supreme Court holdings, the Louisiana Legislature has provided a procedure whereby a Louisiana court can order that the testimony of witnesses under, fourteen years of age be taken without “face-to-face” confrontation when the court has made a specific finding of necessity. See La. R.S. 15:283. However, neither the State nor the trial court attempted to comply with this statute, which requires expert testimony that the child would likely suffer serious emotional distress if forced to give testimony in open court and cannot reasonably communicate his testimony to the court or jury in open court.
We find that the procedure utilized by the trial court here violated the defendant’s right to confrontation guaranteed by the Sixth Amendment as interpreted in Coy [v. Iowa, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988)] and Craig. As can be seen from the record, the State presented no case-specific evidence to prove the necessity of protecting this child from, the trauma of testifying against the defendant. The trial court ordered the “screening” of the defendant merely on a generalized statement of possible trauma for child witnesses.
The violation of defendant’s right to confrontation may be harmless error, State v. Murphy, 542 So.2d 1373 (La. 1989), and is to be analyzed by assuming that the damaging potential of “face-to-face” confrontation was fully realized, then asking whether the reviewing court may conclude that the error was nevertheless harmless beyond a reasonable doubt. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The importance of the testimony of the witness in the state’s case, whether it is cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of the cross-examination permitted, and the overall strength of the state’s case are factors to be considered *538 in determining whether the error was harmless. Id.; see also State v. Code, 627 So.2d 1373, 1384 (La.1993) (noting that before a reviewing court declares an error harmless beyond a reasonable doubt it must find that the Inverdict “ ‘actually rendered in this trial was surely unattributable to the error’ ”).
In this case, the evidence, other than the victim’s testimony, consisted of her hearsay statement to her young friend and the coroner’s testimony that the victim’s hymen was not intact. Since the coroner’s evidence does not necessarily indicate the defendant’s guilt, and the remaining evidence rested on the victim’s credibility, “face-to-face” confrontation of the victim was extremely important. Under these circumstances, we cannot conclude that the conviction in this case was surely unattributable to the confrontation error.
State v. Welch, 760 So.2d at 321-22 (emphasis added).
Likewise in this case, the trial court heard no evidence and made no attempt to determine whether this child’s continued testimony in court would so seriously traumatize the child that special procedures must be invoked. In fact, the trial judge here made her decision based only on her notion that the child had become upset by testifying as a result of the ordinary trauma of the courtroom. This notion was based on the state’s unsupported representation to the court that the child “had broken down” during the recess. Such was not a sufficient basis to invoke the special procedure provided by statute. Moreover, the procedure proposed by the trial court is not one provided by statute. These errors by the trial court were not harmless, as the majority concludes, but indeed completely undermined Defendant’s right to confront the witness through full and effective cross-examination leaving the truthfulness of the victim’s allegations untested. These errors by the trial court further harmed Defendant because it deprived him of due process and the ability to mount his defense against his accuser upon whose sole testimony his guilt or innocence was determined.
Both our state supreme court and the U.S. Supreme Court find court-induced trauma is not enough to outweigh the fundamental right to confrontation and full and effective cross-examination. The trial judge ignored the proper procedure | ^mandated by the legislature and judicially mandated by the State and federal supreme courts. It was error of law to do so. The majority recognizes these precepts, and the requirement of La.R.S. 15:283, but finds that the judge’s error in this regard harmless. I wholly disagree with that conclusion and the majority’s rationale. Additionally, the trial judge specifically stated defense counsel was not engaging in any conduct causing the child to get upset, and a reading of the transcript of the cross-examination of the child discloses no indication that defense counsel was other than considerate and gentle in his questioning. The method suggested by the trial judge, i.e. to have the child’s foster mother stand behind her while she was cross-examined, is not one provided by law and seems to me to violate Defendant’s right to confrontation and to full and effective cross-examination. Placing the foster mother behind the child would impart the same indicia of guilt which exists by placing a defendant behind a screen while a child witness testifies. There is a reason this is not the method provided by statute when the need arises to protect a child abuse victim from unnecessary trauma when testifying. And there is good reason, too, as the cases I have discussed herein demonstrate, why the need for invoking a special procedure must be established by compelling evidence through expert testimony. •
*539 In the cases in which the United States Supreme Court has addressed the confrontation clause in the context of out-of-court statements taken for use at trial, the court emphasizes the importance of the opportunity for effective cross-examination. In Michigan v. Bryant, 562 U.S. 344, 358, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011) (emphasis added) the court explained:
Thus, the most important instances in which the Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to |13obtain evidence for trial. See id., at 43-44. Even where such an interrogation is conducted with all good faith, introduction of the resulting statements at trial can be unfair to the accused if they are untested by cross-examination. Whether formal or informal, out-of-court statements can evade the basic objective of the Confrontation Clause, which is to prevent the accused from being deprived of the opportunity to cross-examine the de-clarant about statements taken for use at trial.
Here the state introduced the Hearts of Hope interview of the victim as evidence at trial. The interview was conducted in the presence of the police with their assistance, and it formed the basis of the charges brought against Defendant. The use of this statement makes it all the more imperative that Defendant be afforded full and complete cross-examination of the witness in court as the only means to afford him his constitutional right to confrontation; and, under Louisiana law, his express constitutional right to cross-examine the only witness against him upon whose sole testimony his fate hangs in the balance. The state’s case depends wholly on the victim’s testimony. No other evidence of Defendant’s guilt was introduced at trial. There was no corroborating medical evidence and no physical evidence of sexual abuse. The •victim’s sister was not called to testify nor was her recorded statement introduced as evidence despite the victim maintaining that her sister was present on some occasions of the alleged abuse by Defendant. The police did not question any of the other men living in the apartment with the victim and made no attempt to find the two men who fled after learning the police were looking for Defendant to question him concerning the victim’s allegations.
Defendant first identified her alleged abuser as “F” stating this was the first letter of his name. During the interview at Hearts of Hope she said that the brother of her mom’s boyfriend, Francisco, did the same things to her as “F” but when pressed on the subject she said Francisco (Defendant) did different things to her | uthan “F” and then proceeded to describe those different things. The record shows there were other men living in the apartment whose name began with the letter “F.” Additionally, the child initially said she did not know the abuser’s last name, but Defendant’s last name is the same as the -victim’s, Ramirez. The other men living in the apartment did not have the same last name as the victim except for Defendant’s nephew, Orbelio Ramirez. I think it worthy of note, too, that Defendant, although illegally in the United States, willingly presented himself to authorities upon learning they wanted to question him concerning the victim. He is the father of two children living with their mother in Guatemala and is working in the U.S. to support his family.
For the reasons stated I believe this conviction should be reversed and the case remanded for new trial.